**LEE CREDIT EXPRESS, INC.**

**RETAIL PURCHASE AGREEMENT**

☐ 426 WESTERN AVENUE • AUGUSTA, ME 04330
(207) 622-9943 OR Toll Free (877) 533-2277
www.leecars.com • E-mail: augusta@leeautomall.com

☐ 95 MAIN STREET • NORWAY, ME 04268
(207) 743-9975 OR Toll Free (866) NORWAY1
www.leecars.com • E-mail: norway@leeautomall.com

☐ 930 PORTLAND ROAD (U.S. ROUTE 1) • SACO, ME 04072
(207) 284-4961 OR Toll Free (877) SACO-LEE
www.leecars.com • E-mail: saco@leeautomall.com

**EXHIBIT 1**

CUST # 691271

BUYER'S NAME: PAUL MIGLIACCIO   DOB: 07/14/1984
CO-BUYER'S NAME: ____   DOB: ____
ADDRESS: 24 IRON MINE HL  GARDINER ME 04345
TEL.(H) (732)947-1761   TEL.(W) ____   E-MAIL: cultivationiration@icloud.com
TEL.(C) (732)947-1761   SALESPERSON: SETH S FOURNIER   DATE: 04/19/2024

The above information has been requested so that we may verify your identity. By signing below, you represent that you are at least 18 years of age and have authority to enter into this Agreement. The Odometer Reading for the Vehicle you are purchasing is accurate unless indicated otherwise. Please refer to the Federal Mileage Statement for full disclosure.

☒ USED VEHICLE

| YEAR | MAKE | MODEL | TYPE | VIN |
|---|---|---|---|---|
| 2019 | SUBARU | CROSSTREK | 2.0I PREMIU | JF2GTAEC4K8248479 |

| ODOMETER READING | CYL | TRANSMISSION | COLOR | TEMP PLATE NO. | STOCK # | DEAL NUMBER |
|---|---|---|---|---|---|---|
| 93478 | 4 | A | NA | | P248479E | 909508 |

**DEALER'S DISCLOSURE (USED VEHICLE SALE):**
PREVIOUS OWNER'S NAME: ST JOHNSBURY CHRYSLER DODGE
ADDRESS: 220 MEMORIAL DR
CITY, STATE, ZIP: ST JOHNSBURY VT 05819
PRIOR USE: PERSONAL
HOW ACQUIRED?  ☐ TRADE-IN   ☒ PURCHASE   ☐ AUCTION   ☐ OTHER (DESCRIBE)
MECHANICAL DEFECTS KNOWN: NONE KNOWN
PRIOR SUBSTANTIAL DAMAGE TO BODY OR ENGINE IF ANY KNOWN: NONE KNOWN

**PURCHASER'S DISCLOSURE (TRADE-IN):**
USED VEHICLE TRADED IN: YEAR____ CYL____ MAKE____
MODEL____ ODOMETER____ TYPE____
COLOR____ VIN____
PRIOR USE____
HAS THE AIR BAG BEEN DEACTIVATED?  ☐ YES   ☐ NO
MECHANICAL DEFECTS KNOWN____
PRIOR SUBSTANTIAL DAMAGE TO BODY OR ENGINE IF ANY KNOWN____

BALANCE OWED TO____
ADDRESS____

| | | |
|---|---|---|
| 1. TRADE-IN ALLOWANCE (D) | $ | N/A |
| 2. BALANCE OWED (S) | $ | N/A |
| 3. NET TRADE-IN ALLOWANCE (1-2) | $ | N/A |
| (if negative, enter 0 here and amount on line 4) | | |
| 4. NEGATIVE EQUITY* | $ | N/A |

***NEGATIVE EQUITY:*** You are aware that if the Balance Owed on your Trade-In Vehicle exceeds the Trade-In Allowance from us then, as a result, you have requested that the Unpaid Balance Due be increased by the difference (known as the "Negative Equity" amount).
X____   X____

**OTHER MATERIAL UNDERSTANDINGS AND INTEGRATED DOCUMENTS:**
☐ Please see attached Spot Delivery Agreement.

| | | |
|---|---|---|
| A. CASH DELIVERED PRICE | $ | 20494.00 |
| B. TOTAL ACCESSORIES | $ | N/A |
| | $ | |
| | $ | |
| C. TOTAL VEHICLE PRICE (A+B) | $ | 20494.00 |
| D. LESS: TRADE-IN ALLOWANCE | $ | N/A |
| E. NET DIFFERENCE (C-D) | $ | 20494.00 |
| F. DOCUMENTATION FEE | $ | 649.00 |
| G. SERVICE CONTRACT | $ | N/A |
| H. CAR CARE | $ | N/A |
| I. | $ | |
| J. | $ | |
| K. | $ | |
| L. TOTAL PRICE (E+F+G+H+I+J+K) | $ | 21143.00 |
| M. SALES TAX | $ | 1162.87 |
| N. VENDOR SINGLE INTEREST | $ | N/A |
| O. GAP | $ | N/A |
| P. TITLE FEE $33/LEMON LAW ARB FEE $1 | $ | 34.00 |
| Q. SUB-TOTAL (L+M+N+O+P+Q) | $ | 22339.87 |
| R. LESS: DEPOSIT (Refund Policy: See Paragraphs 6 & 8 on Reverse Side) | $ | N/A |
| S. PLUS: BALANCE OWED ON TRADE-IN (Includes any Negative Equity*) | $ | N/A |
| T. LOST TITLE FEE ($50) | $ | N/A |
| U. UNPAID BALANCE DUE (Q-R+S+T) | $ | 22339.87 |
| V. CASH DUE AT DELIVERY | $ | 1000.00 |
| W. BALANCE TO BE FINANCED (U-V) | $ | 21339.87 |

**WARRANTY STATEMENT**

This Vehicle has been inspected in accordance with Title 29A, Section 1751, and is in the condition and meets the standards required by that statute and the rules and regulations promulgated thereunder, unless we have marked the box beside "Reconstructable Motor Vehicle" below. No other warranty, express or implied, including the implied warranties of merchantability and fitness for a particular purpose, are given by our Dealership, unless the box beside our "Used Vehicle Limited Warranty Applies" is marked or we enter into a service contract with you within 90 days of the sale date. You will pay all costs for any repairs that are not related to meeting State Inspection standards. Any warranties by a manufacturer or supplier other than our Dealership are theirs, not ours, and only such manufacturer or supplier shall be liable for performance under such warranties. We neither assume nor authorize any other person to assume for us any liability in connection with the sale of the Vehicle and the related goods and services. Verbal promises are not valid.

**USED VEHICLE BUYER'S GUIDE CONTRACTUAL DISCLOSURE STATEMENT (USED VEHICLES ONLY) THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

☐ Reconstructable Motor Vehicle. The Vehicle you are purchasing does not meet Maine's Inspection Laws, is unsafe to drive on the road and must be towed from the Dealership. Please see the attached Unsafe Motor Vehicle Disclosure Statement.
X____
☐ Used Vehicle Limited Warranty Applies. We are providing the attached Limited Warranty in connection with this transaction. Any implied warranties apply for the duration of the Limited Warranty.

**AGREEMENT TO ARBITRATE:** Purchaser(s) and Dealer ("Parties") agree, except as otherwise provided in this Agreement, to resolve by binding arbitration any Dispute between them. Either of the parties may initiate an arbitration proceeding under the applicable rules of the American Arbitration Association at 1-800-778-7879, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org) or another established Alternative Dispute Resolution Agency. **BY SIGNING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ PARAGRAPH 15 ON THE REVERSE SIDE AND AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT TO ARBITRATE. THE PARTIES UNDERSTAND THAT EXCEPT FOR THOSE DISPUTES SPECIFICALLY EXEMPTED FROM ARBITRATION, THEY ARE WAIVING THEIR RIGHT TO A JURY TRIAL AND THEIR RIGHT TO BRING OR PARTICIPATE IN ANY CLASS ACTION OR MULTI-PLAINTIFF ACTION IN COURT OR THROUGH ARBITRATION.** X____   X____

**NOTICE TO PURCHASER:** 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT. THE FRONT AND BACK OF THIS AGREEMENT AND ANY DOCUMENTS WHICH ARE PART OF THIS TRANSACTION OR INCORPORATED HEREIN COMPRISE THE ENTIRE AGREEMENT AFFECTING THIS RETAIL PURCHASE AGREEMENT AND NO OTHER AGREEMENT OR UNDERSTANDING OF ANY NATURE CONCERNING THE SAME HAS BEEN MADE OR ENTERED INTO, OR WILL BE RECOGNIZED; 2. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT; 3. BY SIGNING BELOW, YOU ACKNOWLEDGE RECEIPT OF THIS AGREEMENT; AND 4. THIS AGREEMENT IS NOT VALID OR BINDING UNTIL ACCEPTED BY DEALER.

Purchaser Signature: [signed]   Date: 04/19/24
Accepted by Authorized Dealership Representative: [signed]   Date: 04/19/24
Co-Buyer Signature: ____   Date: ____

RPA-LCE (REV. 9/21)

## ADDITIONAL AGREEMENTS BETWEEN THE DEALERSHIP AND PURCHASER(S)

1. **Terms Used In This Agreement:** This Retail Purchase Agreement contains the following words and phrases that appear throughout this Agreement and have particular meanings:
   - **Agreement** - Means this Retail Purchase Agreement together with any documents that are part of this transaction or incorporated into this Agreement by reference, whether such reference is made in this Agreement or the document itself.
   - **You, Your** - Means the Purchaser(s)/Buyer/Co-Buyer identified on the front side of this Agreement.
   - **We, Us, Our** - Means the Dealership that is identified on the front side of this Agreement and its Authorized Representatives.
   - **Vehicle** - Means the used Vehicle that you are purchasing as described on the front of this Agreement.
   - **Trade-In Vehicle** - Means the vehicle you are delivering to us as part of this transaction as identified on the front side of this Agreement.

2. **Our Right to Increase the Price:** We may increase the price of the Vehicle after we accept this Agreement if the Trade-In Vehicle is reappraised, the addition of new equipment is required by state or federal law, or the increase is caused by state or federal tax rate changes. If the price is increased, you may cancel this Agreement with full refund of any Deposit, provided that the cancellation occurs prior to you taking delivery of the Vehicle.

3. **Your Representations Regarding the Trade-In Vehicle:** Any Trade-In Vehicle delivered by you to us in connection with this transaction shall be accompanied by the Certificate of Title or documents sufficient to enable us to obtain a Certificate of Title to the Trade-In Vehicle in accordance with applicable state law. You warrant that the Trade-In Vehicle delivered to us is properly titled to you; that you have accurately disclosed any information known to you regarding prior use of the Trade-In Vehicle, prior damage and any mechanical defects; that the Trade-In Vehicle has never been titled as or declared a salvage, junk, reconstructed, rebuilt, flood, lemon buyback, or total loss claim vehicle; that you have the right to sell or otherwise convey such Trade-In Vehicle; that such Trade-In Vehicle is free and clear of liens or encumbrances, except as may be noted on the front side of this Agreement; that all emission control equipment is on the Trade-In Vehicle and in satisfactory working order; that all airbags are original and have not been removed or deactivated unless disclosed to us; and, unless you have disclosed otherwise, that you have not removed any equipment from the Trade-In Vehicle subsequent to our appraisal and the odometer reading shown is accurate.

4. **Balance Owed on Trade-In Vehicle:** If you are delivering a Trade-In Vehicle in connection with this transaction and the actual amount of the Balance Owed on the Trade-In Vehicle is greater than the amount of the Balance Owed as listed in this Agreement, you agree to pay the difference to us. If the actual amount of the Balance Owed is less than the amount listed, we will pay or credit the difference to you.

5. **Our Appraisal of Your Trade-In Vehicle:** If you are delivering a Trade-In Vehicle to us in connection with this transaction and delivery will not be made until delivery of the Vehicle being purchased, we shall have the right to reappraise your Trade-In Vehicle at the time of delivery. The reappraised amount shall be the amount allowed for the Trade-In Vehicle in this transaction. If you are dissatisfied with the reappraisal, you may cancel this Agreement with full refund of any Deposit, provided that the cancellation occurs prior to you taking delivery of the Vehicle.

6. **Purchaser's Default and Dealership's Remedies:** In the event of any failure by you to perform your obligations under this Agreement, including but not limited to: (1) Return of a check for insufficient funds or non-payment; (2) failure to deliver the Trade-In Vehicle; (3) your failure to deliver the Trade-In Vehicle Certificate of Title or to disclose material information regarding your Trade-In Vehicle; (4) your failure to pay any amount due to us under this Agreement or any promissory note; (5) your failure to cooperate and sign any document; and/or (6) your failure or refusal to accept delivery of the Vehicle purchased or to pay the agreed upon price hereunder, we shall be permitted, at our sole discretion, to the choice of remedies in this Agreement, which may be used separately or together, including: (1) cancel this Agreement; (2) repossess the vehicle without notice (except as required by law); (3) rescind the sales transaction; (4) seek collection for amounts due; (5) retain any Deposit to offset any amount you owe us; (6) retain as liquidated damages any Deposit up to 20% of the Total Vehicle Price or $500, whichever is less; and, (7) in the event that you have delivered a Trade-In Vehicle as part of the consideration for your purchase of a Vehicle from us, to sell such Trade-In Vehicle and reimburse the Dealership out of the proceeds of such sale for any reasonable expenses incurred in connection with preparing and offering the Trade-In Vehicle for sale and any actual damages suffered by us as a result of your default. We shall further be entitled to recover from you for an event of default any costs incurred by us for repossession/collection, reasonable interest, plus reasonable attorney's fees. Any remedies in this Paragraph 6 shall be in addition to, and not in lieu of, any other remedies available at law or equity. Any waiver of all or part of a remedy hereunder is not a continuing waiver. If the actual amount you owe to us is greater than the amount of the Deposit, you agree to pay the difference to us upon demand. If the actual amount you owe is less than the amount of the Deposit we will pay the difference to you.

7. **Our Right to Cancel this Agreement:** We may cancel this Agreement if: (1) Your credit application is not approved by a financing source; (2) your purchase is subject to dealer arranged financing pursuant to a separate Spot Delivery Agreement and the retail installment sale contract is not accepted or approved by a financing source on the agreed upon terms; or (3) we cannot deliver the vehicle as specified on the front side of this Agreement. You agree that we are not liable for any damages resulting from our failure to deliver the Vehicle if the failure is caused by an accident, fire, act of nature or any other causes beyond our control.

8. **Remedies Upon Rightful Cancellation:** If this Agreement is cancelled (1) pursuant to Paragraph 2 or 7; (2) before this Agreement is signed by an Authorized Representative of the Dealership; or (3) because you are dissatisfied with our reappraisal of your Trade-In Vehicle, as set forth in Paragraph 5, your Deposit and any other amounts you have paid to us will be returned to you when the Vehicle is returned to the Dealership in the same condition as delivered to you, normal wear and tear excepted. You agree to return the Vehicle within 48 hours of receiving written or oral notice from the Dealership. If you have delivered a Trade-In Vehicle to us, the Trade-In Vehicle shall be returned to you if we have not already sold it. If we have sold the Trade-In Vehicle prior to cancellation, you will be paid the agreed upon Trade-In Allowance, less the Balance Owed on the Trade-In Vehicle (if we have paid the Balance Owed to the Lienholder). You agree to pay the cost of repairing any damage and any other losses, liabilities, damages, claims, costs and expenses arising out of your use, possession and control of the Vehicle.

9. **Dealership Security Interest:** Purchaser grants Dealership a security interest in the Vehicle to secure full payment under the Uniform Commercial Code. Dealership has all remedies of a secured party under the Uniform Commercial Code.

10. **Other Products and Lending Sources:** You are not required to purchase any other goods or services from us in order to purchase the Vehicle or obtain financing, nor are you required to obtain financing for this transaction with a particular lending source. In the event this Agreement includes a charge for other goods or services for which you must complete an application for coverage, and for any reason such coverage cannot be provided, you will receive a credit for the amount charged. If the cost of the other goods or services was included in the amount to be financed in connection with this transaction, then this credit will be applied to the outstanding balance you owe to the Lender.

11. **Dealer Assisted Financing:** If we assist you to obtain financing for this transaction, the Annual Percentage Rate may be negotiated with us and we may receive a fee, commission or other compensation from the Lender.

12. **Governing Law:** THE TERMS AND CONDITIONS OF THIS AGREEMENT (INCLUDING ANY DOCUMENTS WHICH ARE A PART OF THIS TRANSACTION OR INCORPORATED HEREIN BY REFERENCE) AND ANY SALE HEREUNDER WILL BE GOVERNED BY THE LAWS OF THE STATE OF MAINE.

13. **Entire Agreement and Signing of Other Documents:** The front and back of this Agreement and any documents which are part of this transaction or incorporated herein comprise the entire agreement affecting this transaction. No other agreement or understanding of any nature has been made or will be recognized. You agree to sign any and all documents necessary to complete the terms of this transaction.

14. **Severability:** Each provision hereof shall be interpreted in such manner as to be effective and valid under applicable law. If any provision hereof is held to be unenforceable or invalid under applicable law, the unenforceability or invalidity of such provision shall not impair the validity or enforceability of the remaining provisions hereof.

15. **AGREEMENT TO ARBITRATE:** Buyer and Seller agree that all claims, disputes, or controversies of every kind and nature that may arise between Buyer and Seller shall be submitted to and resolved by binding arbitration, whether based in part or in whole on contract, tort, common law, statute, regulation or equity, including but not limited to any Claim related to: (1) the application for credit; (2) any negotiations or alleged promises, representations, undertakings or warranties; (3) the purchase or condition of the Vehicle or any products and services purchased in conjunction with the Vehicle, including but not limited to any credit life insurance, disability insurance, GAP protection/insurance, or vehicle extended warranty or service contract (if applicable); (4) the Retail Installment Sales Contract (or other document providing for the financing of the purchase of the Vehicle), the Retail Purchase Agreement, and any related document, transaction, occurrence or relationship; (5) any event of default or act or omission related to repossession of the Vehicle; (6) any question as to whether a dispute may be arbitrated (including the interpretation and scope of this Agreement to Arbitrate), except that any dispute on the enforceability of the jury trial waiver or class action waiver shall be decided by a court of competent jurisdiction; (7) any alleged unfair, deceptive, or unconscionable acts or practices or alleged negligence, acts of fraud or misrepresentation; and/or (8) any claim arising out of or relating to any other prior or future transactions, proposed or actual, between Buyer and Seller, including the servicing of the Vehicle. This Arbitration Agreement shall apply to any claims against, or that may be invoked by, the assigns, directors, officers, representatives, agents, employees, parent companies, affiliated companies, subsidiaries and successors of Seller, and the administrators, assigns, executors, heirs and representatives or agents of Buyer (collectively referred to as "the Parties").

Notwithstanding any other provisions in this Agreement, neither Party is precluded from filing a complaint with the Office of the Attorney General of this State or from participating in a mediation program administered by the Attorney General or Better Business Bureau. The Parties further agree that they are not waiving their right to exercise any self-help or provisional remedy available by law or pursuant to an agreement between them. In addition, either Party may seek remedies in small claims court for individual Claims (as opposed to class action) within the small claims court's jurisdiction, or seek judicial provisional remedies without giving up the right to require arbitration. Until a Party entitled to do so requests arbitration, any Party to this Agreement may proceed with such other rights and remedies and neither Party waives the right to request arbitration by exercising such other rights and remedies or by initially agreeing to litigate a Claim in court. If a Party does not exercise the right to elect arbitration in connection with any particular Claim, that Party still can require arbitration in connection with any other Claim. Once one of the Parties has demanded arbitration, binding arbitration is the exclusive method for resolving any and all Claims between them.

Arbitration will be pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et. seq., and shall be brought by filing a claim under the commercial or consumer rules (as appropriate) of the American Arbitration Association ("AAA"), 1633 Broadway, Floor 10, New York, NY 10019 (www.adr.org). A copy of the rules may be obtained by visiting the website or contacting the AAA. The rules in effect at the time the request for arbitration is made will govern. If the AAA is not willing or able to handle the arbitration, the parties may agree upon another organization or the arbitrator shall be selected pursuant to the FAA. Payment of fees for arbitration shall be in accordance with the rules of arbitration; however, the Seller will, upon Buyer's request, advance up to a maximum of $2,500 toward any portion of the Buyer's filing, administration, service or case management fee, and arbitrator or hearing fee that exceeds the amount he/she would be required to pay if the claim were filed before a state or federal court of law having proper jurisdiction over the proceeding. Each Party shall be responsible for its own attorney, expert and other fees. The arbitrator shall decide who is responsible for paying any costs and fees as part of the decision and award, including any amount advanced by the Seller. Both Parties agree that the arbitration proceedings shall take place in the county in the state of Maine where the Dealership is located (unless the Parties agree otherwise), and consent to the jurisdiction of the courts of said county and state for purposes of enforcing this Agreement to Arbitrate and the decisions of the arbitrator. Or, if the Parties agree, the arbitration hearing can be held by telephone. The arbitrator shall apply and be bound by the laws of the State of Maine and Federal law when making the decision and award. An arbitration award shall be in writing and include the findings of fact and/or conclusions of law. The arbitration proceedings and the decision of the arbitrator shall be open to the public, even if the Arbitration Rules provide otherwise. The findings, decision and award of the arbitrator shall be final and binding, except for any right of judicial review or appeal provided by the FAA. The cost of appeal shall be borne by the appealing party, subject to a final determination by the arbitrators of a fair apportionment of costs. The Arbitrator shall not conduct any class-wide proceedings and will be restricted to resolving the individual disputes between the parties.

If there is a conflict between this Arbitration Agreement and the chosen rules of arbitration or any other arbitration agreement, the terms of this Arbitration Agreement shall control. If any provision of this Arbitration Agreement is invalid or unenforceable, the provision which is found to be invalid or unenforceable shall be inapplicable and deemed omitted, but shall not invalidate the remaining provisions of this Arbitration Agreement, and shall not diminish the parties' obligation to arbitrate the dispute subject to this Arbitration Agreement. The one exception is that, if a finding of partial unenforceability would allow arbitration to proceed on a class-wide basis, then this Agreement will be unenforceable in its entirety. This Agreement to Arbitrate survives (1) any termination, payoff, assignment, transfer or cancellation of the Retail Purchase Agreement and/or Retail Installment Sales Contract/Finance Contract; (2) any repossession of the Vehicle and any legal proceeding by you or us to collect a debt owed by the other; and (3) any bankruptcy proceeding in which you or we are the debtor.