UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PAUL MIGLIACCIO,  )<br>  )<br>  Plaintiff,  )<br>  )<br>v.  )<br>  )<br>ALLY BANK,  )<br>  )<br>  Defendant.  )  | Case No. 1:24-CV-00307-SDN |

**DEFENDANT ALLY BANK'S RESPONSE IN OPPOSITION TO PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S RECOMMENDATION AND REPORT**

Defendant Ally Bank ("Ally"), by counsel, submits this opposition to the Objection[1] filed by Plaintiff Paul Migliaccio ("Plaintiff") regarding Magistrate Judge John C. Nivison's report and recommendation to grant Ally's motion to compel arbitration and to strike class claims, ECF No. 17 (the "Recommendation"). Ally respectfully submits that the Recommendation is carefully reasoned, fair, and grounded on correct legal principles. The Court should adopt the Recommendation in full, strike Plaintiff's class claims, refer his individual claim to arbitration, and stay this case in the meantime pursuant to *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

## I.   INTRODUCTION

Plaintiff's objections to the Recommendation are hamstrung by two initial procedural concerns. First, as set forth in detail below, he impermissibly advances five new arguments that he did not first raise before Judge Nivison. These new arguments are waived and are not substantively

---

[1] Plaintiff's deadline to object to Judge Nivison's Report and Recommendation was March 27, 2025. ECF Nos. 18, 19. Plaintiff did not file any objection by this deadline. When Plaintiff ultimately filed his Objection, he did not request that the Court accept a late filing. Without such a request, the Court should properly ignore the untimely Objection. However, should the Court reach the merits of Plaintiff's Objection, Ally addresses each argument in full here.

reviewable by this Court for the first time at this juncture. *Fireman's Ins. Co. v. Todesca Equip. Co., Inc.*, 310 F.3d 32, 38 (1st Cir. 2002).

The second threshold problem is that he advocates for the wrong standard under which this Court is to review a magistrate judge's recommendation compelling arbitration. Under well-established First Circuit precedent, orders granting motions to compel arbitration are not considered dispositive; therefore, Judge Nivison's rulings are afforded significant deference. *Patton v. Johnson*, 915 F.3d 827, 832 (1st Cir. 2019). As a result, pursuant to 28 U.S.C. § 636(b)(1)(A), this Court may only reverse the Recommendation if it is clearly erroneous or contrary to law. This standard requires that this Court affirm the Recommendation unless, on the entire evidence, it is left with the "definite and firm conviction that a mistake has been committed." *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). Plaintiff suggests, instead, that this Court should review the Recommendation to compel arbitration under a de novo standard, which is incorrect. As set forth below, Plaintiff has failed to demonstrate any reason to upend the Recommendation under the deferential standard.

Those few arguments that Plaintiff did properly preserve for this Court are unpersuasive. First, the Arbitration Agreement explicitly permits the dealership to assign it to Ally. Second, the Arbitration Agreement covers claims arising out of the financing agreement that Plaintiff signed at the same time. In this context, courts have uniformly found that arbitration clauses are enforceable by assignees of the financing agreement, such as Ally here. *See, e.g.*, *Sherer v. Green Tree Servicing, Inc.*, 548 F.3d 379, 382 (5th Cir. 2008). Nor does the integration clause in Plaintiff's financing contract prevent Ally from enforcing the Arbitration Agreement—these contracts are intended, by their own explicit language, to be read together. *See, e.g.*, *Rota-McLarty*

*v. Santander Consumer, USA, Inc.*, 700 F.3d 690, 700 (4th Cir. 2012). Judge Nivison's conclusions on these points were sound and were neither clearly erroneous nor contrary to law.

Finally, with respect to the second part of Ally's motion, which sought to enforce a clear and unambiguous class action waiver, the Recommendation should be adopted in full on this point. Under the plain language of the class-action waiver, Plaintiff surrendered any class action rights he might have had. He is incorrect—and also did not preserve the argument—that this Court may not simultaneously decide both a motion to compel arbitration and a motion to enforce a class action waiver. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 508 (2018); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346–47 (2011).

## II.     FACTUAL BACKGROUND

According to the Complaint and documents incorporated therein by reference, Plaintiff entered into a Retail Purchase Agreement ("RPA") with his car dealership, Lee Credit Express, Inc. (the "Dealership"). The RPA is one of two contracts that Plaintiff signed with the Dealership on the same day in April 2024, as part of a single transaction to purchase a vehicle. In addition to the RPA, Plaintiff and the Dealership also simultaneously signed a Retail Installment Sale Contract ("RISC"). The RPA's purpose was to outline the terms of sale of the vehicle from Dealership to Plaintiff; the RISC's purpose was to allow Plaintiff to finance his purchase of the vehicle. *See* ECF No. 9-1, 9-2. Plaintiff takes issue with a $649 documentation fee (the "Documentation Fee") that the Dealership listed in the RPA and that the Dealership also carried over as a line item in the RISC's financing arrangements.[2] ECF No. 1-1 at 5, ¶¶ 21–22; *compare* ECF No. 9-1 at 2, ¶ F *with* ECF No. 9-2 at 2, ¶ I.

---

[2] Specifically, Plaintiff alleges the $649 Documentation Fee violates Maine's Unfair Trade Practices Act, 5 M.R.S. § 207. *See* ECF No. 1-1 at 9, ¶ 54.

The RPA contains a paragraph titled "Arbitration Agreement" which states, among other things:

> Buyer [Plaintiff] and Seller [Dealership] agree that all claims, disputes, or controversies of every kind and nature that may arise between Buyer and Seller shall be submitted to and resolved by binding arbitration . . . including but not limited to any Claim related to . . . the Retail Installment Sales Contract (or other document providing for the financing of the purchase of the Vehicle), the Retail Purchase Agreement, and any related document, transaction, occurrence or relationship. . . . This Arbitration Agreement shall apply to any claims against . . . the assigns . . . of Seller.

ECF No. 9-1 at 3, ¶ 15(4) and final sentence of ¶ 15.

In other words: (1) claims arising from the RISC and the RPA are subject to arbitration, and (2) the Arbitration Agreement extends to assigns of the Dealership. As Judge Nivison astutely pointed out in his Recommendation, the RPA's statement that "[t]his Arbitration Agreement *shall apply to any claims against . . . the assigns . . . of Seller* [i.e. the Dealership]" is not limited to the assigns *of the RPA only*; rather, it applies to the Dealership's assigns generally. ECF No. 9-1 at 3, final sentence of ¶ 15 (emphasis added); *see also* ECF No. 17 at 6 (portion of Recommendation emphasizing this point). As a result, the RPA empowered the Dealership to assign the Arbitration Agreement to anyone. Consistently, the RPA defined itself as encompassing both the RPA and the RISC—a fact also emphasized in the Recommendation. *Id.*; *see also* ECF No. 9-1 at ¶ 1 (definition of "Agreement"). Once these two contracts (the RPA and the RISC) were executed, the Dealership assigned the RISC to Ally. ECF No. 1-1 at 5, ¶ 23.

### III.   STANDARDS OF REVIEW

In ruling on Plaintiff's objections to the Recommendation, First Circuit precedent requires the Court to undertake a bifurcated review. First, the Court should not reverse the Recommendation to grant Ally's motion to compel arbitration unless the Court concludes it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). This lenient standard of review

4

is warranted because motions to compel arbitration are not dispositive motions. *Patton v. Johnson*, 915 F.3d 827, 832 (1st Cir. 2019). Second, the Court should review the Recommendation to grant Ally's motion to strike de novo, since that portion of the Recommendation addresses a motion that disposes of a portion of the case. 28 U.S.C. § 636(b)(1)(C); *Patton*, 915 F.3d at 832.

A. **THE RECOMMENDATION TO GRANT ALLY'S MOTION TO COMPEL ARBITRATION SHOULD NOT BE REVERSED UNLESS IT IS "CLEARLY ERRONEOUS OR CONTRARY TO LAW"**

"[A]s Article I judicial officers, magistrate judges ordinarily may not decide motions that are dispositive either of a case or of a claim or defense within a case." *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 13 (1st Cir. 2010). While a magistrate judge may decide a non-dispositive motion, *see* Fed R. Civ. P. 72(a), he or she may only make a recommended disposition of a dispositive motion, *see* Fed. R. Civ. P. 72(b).

The First Circuit has explained that a motion to compel arbitration is a non-dispositive motion and therefore, if it is referred to a magistrate judge, the magistrate judge should issue an order rather than a report and recommendation. *Patton*, 915 F.3d at 832. If the magistrate inadvertently issues a report and recommendation instead, then the District Court may cure the mistake by treating the recommendation as an order and reviewing it for clear error only. *Id.* at 833 (holding that "a motion to compel arbitration is a non-dispositive motion. . . . Accordingly, an order, not a recommended decision, would have been the appropriate vehicle for the magistrate judge's findings and conclusions. But the district court came to the rescue: it recognized this discrepancy and treated the R&R as an order. . . . The district court's prophylactic action cured the defect and rendered any procedural error harmless.").

This Court should follow *Patton*'s rubric by treating the Recommendation as an order insofar as it "recommends" granting Ally's motion to compel arbitration. The Court should not reverse this portion of the Recommendation unless it is "clearly erroneous or contrary to law."

28 U.S.C. § 636(b)(1)(A); *see also Patton*, 915 F.3d at 833; *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999). "Clearly erroneous" review means that the Court must "accept both the trier's findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record, [the Court] 'form[s] a strong, unyielding belief that a mistake has been made.'" *Phinney*, 199 F.3d at 4 (quoting *Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 152 (1st Cir. 1990)); *see also U.S. Gypsum*, 333 U.S. at 395 (clear error review requires that the reviewing court affirm unless on the entire evidence it is left with the "definite and firm conviction that a mistake has been committed").

### B. THE RECOMMENDATION TO GRANT ALLY'S MOTION TO STRIKE CLASS CLAIMS SHOULD BE REVIEWED DE NOVO

By contrast, the portion of the Recommendation that recommends granting Ally's motion to strike Plaintiff's class claims is reviewed de novo, because unlike Judge Nivison's arbitration referral, it is dispositive of a portion of the case. 28 U.S.C. § 636(b)(1)(C); *Patton*, 915 F.3d at 832 ("When a magistrate judge issues a recommended decision on a dispositive motion and an objection is interposed, district court review is de novo.").

### IV. ARGUMENT

### A. A PARTY WHO FAILS TO MAKE AN ARGUMENT BEFORE THE MAGISTRATE JUDGE CANNOT RAISE IT IN THE DISTRICT COURT FOR THE FIRST TIME WHEN OBJECTING TO A RECOMMENDED DECISION

As a threshold matter, at least five arguments in Plaintiff's objection to the Recommendation are barred and should be rejected without further analysis because they were not properly preserved and therefore have been waived.

It is well-established in the First Circuit and in prior orders of this Court that a party who is objecting to a magistrate judge's recommendation cannot raise new arguments that the magistrate judge did not have an opportunity to consider. *Fireman's Ins. Co. v. Todesca Equip.*

*Co.*, 310 F.3d 32, 38 (1st Cir. 2002); *see Borden v. Sec'y of Health and Human Serv.*, 836 F.2d 4, 6 (1st Cir. 1987) ("Parties must take before the magistrate, 'not only their "best shot," but all of their shots'") (quoting *Singh v. Superintending Sch. Comm.*, 593 F. Supp. 1315, 1318 (D. Me. 1984)); *United States v. Cadieux*, 324 F. Supp. 2d 168, 170 (D. Me. 2004).

Here, Plaintiff makes numerous new legal arguments in his objection to the Recommendation, ECF No. 21, that he did not raise in his opposition to Ally's motion to compel arbitration and to strike, ECF No. 15:

1) Plaintiff argues for the first time that assignment of the Arbitration Agreement requires a specific act manifesting intent to transfer, and that Ally did not meet its burden of proving such an act. ECF No. 21 at 5.

2) Plaintiff argues for the first time that a general assignment of a debt is not enough to carry a separate right to arbitrate along with it. *Id.* at 6–8.

3) Plaintiff argues for the first time that the RPA's language does not support the conclusion that RPA was ever assigned to Ally. *Id.* at 9–12.

4) Plaintiff argues for the first time that this dispute does not arise out of the contract containing the Arbitration Agreement (i.e. the RPA). *Id.* at 15–17.

5) Plaintiff argues for the first time that Ally's motion to strike should be denied because the Court should not simultaneously decide both a motion to compel arbitration and substantive issues on the merits. *Id.* at 17.

Since these arguments have all been waived, this Court need not, and indeed may not, address any of them in reviewing the Recommendation. Nonetheless, Ally will discuss them briefly below, purely out of an abundance of caution.

**B.     THE RECOMMENDATION IS NEITHER CLEARLY ERRONEOUS NOR CONTRARY TO LAW IN CONCLUDING THAT ALLY IS ENTITLED TO INVOKE THE ARBITRATION AGREEMENT**

The bulk of Plaintiff's objection to the Recommendation rests on unpersuasive arguments that Ally did not establish that it is entitled to invoke the Arbitration Agreement in the RPA, and thus did not satisfy the first factor under *Bossé v. N.Y. Life Ins. Co.*, 992 F.3d 20, 27–28 (1st Cir. 2021). ECF No. 21 at 3–15. Even if Plaintiff had properly preserved his principal arguments on this topic by raising them before Judge Nivison (which he did not, *see supra* § IV.A), the Recommendation is not clearly erroneous or contrary to law in concluding that Ally can enforce the Arbitration Agreement. *See* ECF No. 17 at 5–7. In objecting to the Recommendation, Plaintiff complains that Ally cannot invoke the RPA's Arbitration Agreement in connection with this lawsuit because "there is no contractual language assigning the arbitration agreement [in the RPA] to Ally Bank." ECF No. 21 at 2. In a nutshell, and as explained in greater detail below, in instances where (as here) the Arbitration Agreement in a purchase contract *itself* contemplates that assignees may enforce it with respect to claims arising from or related to an accompanying financing contract, the case law uniformly supports the Recommendation's conclusion.

Plaintiff's first principal argument, which he did not raise before Judge Nivison, is that "neither Ally nor the Magistrate Judge pointed to any evidence of a manifestation of [the Dealership's] intent to assign the right to enforce the RPA to Ally." ECF No. 21 at 5 (citing Maine and Wisconsin case law to the effect that an enforceable assignment requires an affirmative act of the assignor).[3]

---

[3] The state Supreme Court cases that Plaintiff cites involve general contract interpretation principles involving assignments, but nothing specific to the highly specialized financial services context, and certainly nothing like the current factual scenario involving indirect automobile financing. *Herzog v. Irace*, 594 A.2d 1106, 1107 (Me. 1991) (personal injury settlement proceeds allegedly assigned to physician); *Sturtevant v. Town of Winthrop*, 732 A.2d 264, 265 (Me. 1999) (snowplowing contract allegedly assigned to sole shareholder of snowplowing company); *Pagoudis v. Keidl*, 988 N.W.2d 606, 615 (Wis. 2023) (offer to purchase allegedly assigned from individual to his LLC prior to completion of residential real estate purchase).

Plaintiff also did not raise his second principal argument before Judge Nivison, namely that "a general assignment of a debt is not enough to carry a separate right to arbitrate along with it—there must be a manifestation of an intent to assign the right to compel arbitration specifically." ECF No. 21 at 8 (citing non-Maine cases involving general assignments of a financing contract, as opposed to assignments of an arbitration agreement specifically).[4]

The Court need not and indeed cannot substantively address either of these waived arguments. *See supra*, § IV.A. But if it were to do so, it would be obvious that both Plaintiff's arguments fail to address the RPA's explicit statement that *the Arbitration Agreement itself* extends to the Dealership's assigns generally (whether Ally or anyone else). ECF No. 9-1 at 3, final sentence of ¶ 15 ("This Arbitration Agreement shall apply to any claims against . . . the assigns . . . of Seller."). Indeed, in this way the Arbitration Agreement itself in the RPA *does* "manifest an intent to assign the right to compel arbitration specifically." And the fact that the Arbitration Agreement extends its protections to "assigns" generally—as opposed to Ally specifically—does not mean that the assignment was not "an affirmative act of the assignor."

Cases that are directly analogous to this situation—where the arbitration agreement itself contemplates enforceability of claims related to the financing contract by assignees of that contract—uniformly support the Recommendation's correct conclusion that Ally is entitled to

---

[4] *Garcia v. Midland Funding, LLC* involved an assignment of a financing contract to a debt buyer. No. 15-6119-(RBK/KMW), 2017 WL 1807563, at *3 (D.N.J. May 5, 2017). The District Court reviewed the purchase agreement between the debt originator and the debt buyer, whereby the account was transferred from one to the other, and concluded that that particular contract "did not clearly convey the right to demand individual arbitration in the instant case." *Id.* This is a different fact pattern than the case at bar, in which the Arbitration Agreement explicitly extends itself to the Dealership's assigns; the contract between the Dealership and Ally is not before the Court and is not a necessary piece of the analysis given the Arbitration Agreement's own language. *Lance v. Midland Credit Management, Inc.*, 375 F. Supp. 3d 604, 615 (E.D. Pa. 2019); *Lester v. Portfolio Recovery Associates, LLC*, No.1:18-CV-0267-VEH, 2018 WL 3374107, at *3 (N.D. Ala. July 11, 2018); *Winkelman v. Midland Credit Management, Inc.*, 3:23-cv-407 (VAB), 2024 WL 3551152, at *3 (D. Conn. July 27, 2024); and *Pounds v. Portfolio Recovery Associates, LLC*, 851 S.E.2d 423, 429 (2020), have virtually identical fact patterns to *Lance* and thus are also not relevant here. Indeed, *Winkelman* contains language effectively distinguishing it from the case at bar: it observes that "courts distinguish between the assignment of rights to the underlying agreement, including the right to arbitrate, and the assignment of the right to enforce the debt." 2024 WL 3551152, at *3.

invoke the RPA's Arbitration Agreement. For example, in *Sherer*, the Fifth Circuit held that a loan servicer, who had not signed the original arbitration agreement, could compel arbitration of a borrower's claim, because in the arbitration agreement that the borrower had signed, the borrower agreed to arbitrate "any claims arising from the 'relationships which result from th[e] [a]greement.'" 548 F.3d at 382. The Fifth Circuit reasoned that the borrower's relationship with the loan servicer was "just such a relationship." *Id.* Similarly, in *Taggatz v. Midland Credit Management*, another federal District Court examined the arbitration agreement itself and concluded that the debt buyer in that case could compel arbitration because the arbitration clause by its own language applied to claims "arising from or relating to the Agreement or the relationships which result from this Agreement." No. SA-18-CV-169-XR, 2018 WL 11430810, at *5 (W.D. Texas Nov. 27, 2018).

These cases, and many others like them from states as disparate as West Virginia, Pennsylvania, Kentucky, and Mississippi,[5] ground their analysis on the words of the arbitration agreements themselves, rather than looking to ancillary documents to which the borrower is a stranger, such as the contract between the loan originator and the loan servicer. Similarly, here, the Recommendation quite rightly reviewed the language of the RPA's Arbitration Agreement *itself*.

Numerous components of the RPA's Arbitration Agreement language enable Ally, the Dealership's assignee, to enforce it:

- The Arbitration Agreement, by its own terms, applies to all claims "related to" the RISC as well as to the RPA. ECF No. 9-1, ¶ 15(4). Since even Plaintiff concedes

---

[5] *See, e.g.*, *Green Tree Servicing, LLC v. Charles*, No. 3:16-cv-50-WHB-JCG, 2017 WL 7736120, at *5–6 (S.D. Miss. Feb. 7, 2017); *Herndon v. Green Tree Servicing LLC*, No. 4:15-cv-01202, 2016 WL 1613973, at *5 (M.D. Pa. Apr. 22, 2016); *Bluestem Brands, Inc. v. Shade*, 805 S.E.2d 805, 814 (W.D. Va. 2017); *Household Fin. Corp. II v. King*, No. 2009-CA-001472-MR, 2010 WL 3928070, at *4 (Ky. Ct. App. Oct. 8, 2010).

22940823.1

    that the execution and immediate assignment of the RISC is part of the same vehicle purchase transaction, *see* ECF No. 15 at 2 & ECF No. 1-1 at 5, ¶ 23, this provision would make no sense if Ally, the immediate assignee of the RISC, could not enforce the Arbitration Agreement.

- The Arbitration Agreement also extends to claims "related to . . . any related document, transaction, occurrence or relationship [i.e. related to the RPA or the RISC]." *Id.* This "relationship" language is similar to what persuaded the Fifth Circuit in *Sherer*—Plaintiff's relationship with Ally, like the loan servicer relationship in *Sherer*, is "just such a relationship" related to the RISC. 548 F.3d at 382.

- The Arbitration Agreement, by its own terms, extends to the Dealership's "assigns." ECF 9-1 at 3, ¶ 15 (last sentence of first paragraph). As Judge Nivison astutely noted, the Arbitration Agreement covers all of Lee's assigns and is not limited solely to assigns of the RPA. ECF No. 17 at 6.

- The Arbitration Agreement "survives . . . any . . . assignment [or] transfer . . . of the Retail Purchase Agreement and/or Retail Installment Sales Contract." *Id.* ¶ 15 (last sentence of last paragraph). Thus, the RISC's transfer to Ally did not disturb the operation of the Arbitration Agreement itself.

    For each of these independent reasons, the RPA's Arbitration Agreement itself, by its own language, empowers Ally to invoke the right to arbitration in its capacity as assignee of the RISC. Not only is the Recommendation not "clearly erroneous or contrary to law," 28 U.S.C. § 636(b)(1)(A), it is in fact entirely correct on this score.

C. **THE RECOMMENDATION IS NEITHER CLEARLY ERRONEOUS NOR CONTRARY TO LAW IN CONCLUDING THAT THE RISC'S INTEGRATION CLAUSE DOES NOT PRECLUDE ALLY FROM ENFORCING THE ARBITRATION CLAUSE IN THE RPA**

Plaintiff next argues that the RISC's integration clause bars Ally from invoking the RPA's Arbitration Agreement. *See* ECF No. 9-2 at 1 ("HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it."); ECF No. 21 at 12–15. But by insisting that the RISC's integration clause means that Ally is a stranger to the RPA, Plaintiff inadvertently argues himself right out of his own case.

Plaintiff's second objection to the Recommendation, ECF No. 21 at 12–15, lays bare the fundamental flaw underlying his lawsuit: to avoid arbitration, Plaintiff has to pick and choose which sections of the RPA apply to Ally and which do not. His sole claim for relief is premised on the RPA's Documentation Fee, so he is eager to pin any theoretical liability for the imposition of the fee on Ally. ECF 1-1 at 5 ¶¶ 21, 22 (Plaintiff's complaint alleging that the Dealership charged him "document fees" and included them in the financed amount). Yet he is not willing to concede that the RPA's arbitration clause *also* applies to Ally. In other words, he wants to use the RISC's integration clause to avoid the RPA's arbitration clause, but not to absolve Ally of the liability to which he believes the RPA gives rise. This lawsuit is his unpersuasive attempt to impose the RPA's *burdens* on Ally, while depriving Ally of the RPA's *benefits*. The RISC's integration clause does not aid him in this endeavor; if anything, it hinders him.

For the same reason, Plaintiff's attempt to analogize the case at bar to this Court's decision in *Culebra II, LLC v. River Cruises & Anticipation Yachts, LLC*, 564 F. Supp. 2d 70, 80 (D. Me. 1008), and similar decisions, is not persuasive—even if he had preserved this argument for consideration by this Court by raising it before Judge Nivison, which he did not. *See supra*, § IV.A;

ECF No. 21 at 13–14. *Culebra II*, as well as the Maine case it cites, *Handy Boat Serv., Inc. v. Professional Services, Inc.*, 711 A.2d 1306, 1308–09 (Me. 1998), had nothing to do with arbitration. These cases merely set forth the parole evidence rule in the context of an integration clause.[6] In this case, as with his arguments based on *Garcia*, *Lance*, *Lester*, *Winkelman*, and *Pounds*, *see supra* note 4, which he also did not raise before Judge Nivison in the first instance, Plaintiff is tripped up by the fact that it is the RPA's Arbitration Agreement itself—not the RISC, and not any other written agreement—that Ally is using to invoke its right to arbitration. And it is also the RPA, not the RISC, that gives rise to Plaintiff's claim against Ally. The Dealership, not Ally, charged Plaintiff the Documentation Fee that he is challenging in his lawsuit. Plaintiff agreed to the Documentation Fee in the RPA. The RISC just financed the debt that Plaintiff had already incurred in the RPA; his claim rests on the fact that he was charged the Documentation Fee, not that he was afforded an opportunity to finance the Documentation Fee. It is the RPA that Plaintiff is challenging, and yet he needs to use the RISC to reach his sole target, Ally. Unfortunately for him, he cannot use the RPA to impose liability on Ally without running afoul of the RPA's Arbitration Agreement.

Plaintiff unfairly attacks Judge Nivison's conclusion to the contrary. Judge Nivison wrote: "An integration clause does not prevent the Court from interpreting the RPA and RISC together." ECF No. 17 at 7 n.1. He cited a Fourth Circuit case interpreting Maryland law. *Id.* (citing *Rota-McLarty*, 700 F.3d at 700). While *Rota-McLarty* is not binding here in the First Circuit, it is a well-

---

[6] Plaintiff's objection tries to set up a split of authority between the Third and Fourth Circuits on the issue of whether the RPA and RISC can be read together by comparing *Jennings v. Carvana LLC*, No. 22-2948, 2024 WL 1209746, at *2 (3d Cir. Mar. 21, 2024), and *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 700 (4th Cir. 2012). ECF No. 21 at 13. To the extent these two cases conflict—and it is not clear they do—this Court need not wade into that controversy in this case, which can be decided on other grounds, *i.e.*, that Plaintiff has no case against Ally without the RPA, so he is unable to avoid the RPA's Arbitration Agreement.

22940823.1

reasoned decision, and this Court's deferential standard of review should prevent it from concluding that Judge Nivison's embrace of this case was clearly erroneous or contrary to law.

For all these reasons, the Court should adopt the Recommendation's rejection of Plaintiff's argument premised on the RISC's integration clause.

**D.   THE RECOMMENDATION CORRECTLY CONCLUDES THAT THE INDIVIDUAL CLAIM IN THE COMPLAINT FALLS WITHIN THE ARBITRATION CLAUSE'S SCOPE**

Plaintiff next raises yet another brand-new argument that his claim against Ally does not fall within the scope of the arbitration clause is not for this Court to decide. Even if the Court could reach this argument, which it cannot, *see supra* § IV.A, it should not be persuaded by it.

As a threshold matter, the Arbitration Agreement itself provides that "any question as to whether a dispute may be arbitrated (including the interpretation and scope of this Agreement to Arbitrate)" is delegated to the arbitrator, not to the Court. ECF No. 9-1 at 3, ¶ 15(6). The First Circuit is very clear that delegation clauses like these are strictly enforceable under established Supreme Court precedent:

> In *Henry Schein* [*v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019)], the Supreme Court emphasized that where the parties "by clear and unmistakable evidence" delegate issues of arbitrability to the arbitrator, "the courts must respect the parties' decision as embodied in the contract" and send the issue to the arbitrator to decide. "[That is true even if the court] thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." [*Id.* at 68.] Where there is a clear and unmistakable delegation of arbitrability issues, the court's proper inquiry "before referring a dispute to an arbitrator" is limited to "determin[ing] [(1)] whether a valid arbitration agreement exists . . . [b]ut [(2)] if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." [*Id.* at 69.]

*Bossé v. N.Y. Life Ins. Co.*, 992 F.3d 20, 27–28 (1st Cir. 2021) (most internal citations omitted). The Arbitration Agreement makes a "clear and unmistakable delegation of arbitrability issues," so this Court may not decide such issues.

14

It is worth noting, additionally, that even if this Court could decide arbitrability, Plaintiff's argument on the final *Bossé* factor would be unpersuasive. Plaintiff's complaint against Ally rests on his allegation that the Dealership advertised a price for Plaintiff's used car that did not include the Documentation Fee. Fairly construed, that claim would lie, if at all, against the Dealership only, since it pertains to the Dealership's advertising practices before Plaintiff even walked through the door. As already explained *supra*, § IV.C, Plaintiff is attempting to loop Ally into that theory of liability, and his only hope of doing so is through the RISC. He cannot tie Ally to the advertised price (sans Documentation Fee) without the RISC, but by the same token, if he wants to invoke the RISC, he cannot avoid the RPA's arbitration clause. There is no clear error nor a conclusion contrary to law for this Court to find on this topic.

E.   **EVEN ON DE NOVO REVIEW, THE RECOMMENDATION IS CORRECT THAT THE COMPLAINT'S CLASS CLAIMS SHOULD BE STRICKEN**

Finally, Plaintiff is wrong when he argues that his class claims may not be stricken at this juncture because "[w]hen compelling arbitration, courts should not simultaneously decide substantive issues that go to the merits of the case." ECF No. 21 at 17. Once again, this is an argument that Plaintiff has waived by not raising it first before Judge Nivison. And even if he had, and even on de novo review, this Court should nonetheless adopt the Recommendation to strike Plaintiff's class claims.

The Arbitration Agreement's plain language empowers this Court to do exactly what Plaintiff claims it cannot do. "[A]ny dispute on the enforceability of the . . . class action waiver shall be decided by a court of competent jurisdiction" in the first instance. ECF No. 9-1 at 3, ¶ 15(6). These class action waivers, moreover, have been validated as enforceable by more than a decade of United States Supreme Court precedent. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 508 (2018) (prohibition on class action waiver interfered with a fundamental attribute of arbitration);

15

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346–47 (2011) (invalidating California's *Discover Bank* rule that prohibited class action waivers in arbitration, as preempted by the Federal Arbitration Act); *see also Taggatz*, 2018 WL 11430810, at *7 ("Unlike the rest of the arbitration agreement, this sentence specifically gives this Court authority to decide whether it is valid. Class action waivers in arbitration agreements are enforceable.").

For these reasons, the Recommendation correctly urges this Court to enforce the Arbitration Agreement's class action waiver against Plaintiff and strike his class claims upfront before referring his individual claim for arbitration.

## V. CONCLUSION

For all these reasons, Ally respectfully requests the Court to adopt Judge Nivison's Recommendation in full, strike Plaintiff's class claims, refer his individual claim to arbitration, and stay this case in the meantime pursuant to *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

April 24, 2025

Respectfully submitted,

**ALLY BANK**

By: */s/ Sigmund D. Schutz*

Sigmund D. Schutz
PRETI FLAHERTY LLP
One City Center
Post Office Box 9546
Portland, ME  04112-9546
Telephone: 207.791.3000
Email: sschutz@preti.com

*and*

John C. Lynch (admitted *pro hac vice*)
Ethan G. Ostroff (admitted *pro hac vice*)
Kathleen M. Hutchenreuther (admitted *pro hac vice*)
TROUTMAN PEPPER LOCKE LLP
222 Central Park Avenue, Suite 2000

22940823.1

>Virginia Beach, VA 23462-3038
>Telephone: 757.687.7500
>Email: john.lynch@troutman.com
>Email: ethan.ostroff@troutman.com
>Email: kathleen.hutchenreuther@troutman.com

>*Counsel for Defendant Ally Bank*