UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| PAUL MIGLIACCIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24-cv-00307-SDN |
| | ) | |
| ALLY BANK, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Maine regulations require car dealers to advertise the full price of the vehicle, including any extra charges the dealer might impose. 26-239 C.M.R. ch. 104 §§ 5(B), 1(D). Paul Migliaccio bought a car from a dealer who nonetheless tacked on a so-called "junk fee"—in this case, a "document fee"—without including the fee in the advertised price. So Mr. Migliaccio sued on behalf of himself and a putative class of car buyers who allegedly paid similar junk fees. But Mr. Migliaccio did not directly sue the dealer that sold him his car; instead, he sued Ally Bank ("Ally"), which holds Mr. Migliaccio's car loan, as well as similar loans from car dealers across the state.

Ally now moves to compel arbitration or dismiss Mr. Migliaccio's claims. In Ally's view, the loan document incorporates a mandatory arbitration clause from a separate purchase agreement between Mr. Migliaccio and the dealer. The arbitration clause requires Mr. Migliaccio to bring all claims related to the car sale through arbitration and waives his right to pursue claims on a class basis. Mr. Migliaccio argues the mandatory arbitration clause does not apply here because the dealer never assigned the purchase agreement—only the loan document—to Ally, and the loan document assigned to Ally does not contain an arbitration clause.

1

The Magistrate Judge recommended I grant Ally's motion to compel arbitration. Mr. Migliaccio objected. I have reviewed the Recommended Decision, along with the entire record. For the following reasons, I affirm the Recommended Decision.

## FACTUAL BACKGROUND[1]

Lee Credit Express ("Lee Credit") is a car dealer in Maine. Compl. ¶¶ 2, 24. On April 19, 2024, Lee Credit sold Mr. Migliaccio a used Subaru for $21,143.00, plus taxes and a title fee on top. *Id.* ¶ 21; RPA at 2. However, Lee Credit had previously advertised the car at $20,494.00. Compl. ¶ 20. The reason for the $649 difference was a "documentation fee" Lee Credit charged to electronically generate the vehicle sale documents. *Id.* ¶¶ 21, 28; RPA at 2. Lee Credit had not included this documentation fee in the advertised fee and did not allow Mr. Migliaccio the opportunity to opt out of the fee. Compl. ¶ 27.

A Retail Purchase Agreement ("RPA") between Mr. Migliaccio and Lee Credit governs the terms of the sale, itemizing all costs including the base price, fees, and taxes. *See* RPA. The RPA shows that Mr. Migliaccio financed his purchase, putting down $1,000

---

[1] Courts usually resolve motions to compel arbitration under the summary judgment standard. *Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 175 (1st Cir. 2021). However, when the party moving to compel arbitration relies exclusively on allegations in the complaint, "the court reviews the motion like a motion to dismiss." *Id.* at 177. Here, Ally's motion relies not only on the Complaint's factual allegations, but also on the purchase agreement (the "Retail Purchase Agreement" or "RPA"), ECF No. 9-1, and the loan document (the "Retail Installment Sale Contract" or "RISC"), ECF No. 9-2, which Ally attached to its motion.

When documents appended to a motion to dismiss are central to the underlying claims and neither party disputes their authenticity, I can consider those documents without applying the summary judgment standard. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Mr. Migliaccio does not contest the authenticity of the RISC, the assignment of which is central to his claim.

While Mr. Migliaccio appears to contest the authenticity of the RPA—stating that "Ally makes no effort to introduce the RPA as evidence," and refers to it as a "purported RPA," ECF No. 15 at 10—he attached his own identical copy of the RPA to his response to Ally's motion. ECF No. 15-1. Though he claims that Ally's version cuts off certain portions of the RPA, ECF No. 15 at 12 n.5, I can discern no difference between the RPA Mr. Migliaccio produced and the one Ally produced. Nonetheless, out of an abundance of caution, I consider only the version Mr. Migliaccio attached.

Accordingly, I draw these facts from the Complaint at ECF No. 1-1, the RPA at ECF No. 15-1, and the RISC at ECF No. 9-2.

in cash and taking out a loan for the remaining $21,399.87 balance, which included the documentation fee, sales tax, and title fee. Compl. ¶ 22; RPA at 2. A separate Retail Installment Sale Contract ("RISC") between Mr. Migliaccio and Lee Credit reflects the terms of that loan: 18% interest paid over seventy-two monthly installments. *See* RISC. While the RISC designates Lee Credit as the seller and creditor and Mr. Migliaccio as the buyer, it also contains an assignment clause by which Lee Credit immediately assigned "its interest in this contract" to Ally. RISC at 1.

The RPA contains an integration clause. Under the heading, "Entire Agreement and Signing of Other Documents," the RPA states,

> The front and back of this [RPA] and any documents which are part of this transaction or incorporated herein comprise the entire agreement affecting this transaction. No other agreement or understanding of any nature has been made or will be recognized. You agree to sign any and all documents necessary to complete the terms of this transaction.

RPA ¶ 13.

The RPA contains two arbitration clauses. First, a short arbitration clause appears on the first page of the RPA. Under the heading "AGREEMENT TO ARBITRATE," it states:

> Purchaser(s) and Dealer ('Parties') agree, except as otherwise provided in this Agreement, to resolve by binding arbitration any Dispute between them. . . . BY SIGNING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ PARAGRAPH 15 ON THE REVERSE SIDE AND AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT TO ARBITRATE. THE PARTIES UNDERSTAND THAT EXCEPT FOR THOSE DISPUTES SPECIFICALLY EXEMPTED FROM ARBITRATION, THEY ARE WAIVING THEIR RIGHT TO A JURY TRIAL AND THEIR RIGHT TO BRING OR PARTICIPATE IN ANY CLASS ACTION OR MULTI-PLAINTIFF ACTION IN COURT OR THROUGH ARBITRATION.

RPA at 1. Mr. Migliaccio's signature appears on the line below the "Agreement to Arbitrate" clause. Second, as referenced in this first arbitration clause, the RPA has a

separate arbitration clause in paragraph 15 that specifically references both the RISC and the RPA, and that binds the parties—Mr. Migliaccio and Lee Credit—to resolve all disputes related to the RPA and RISC through arbitration:

> Buyer and Seller agree that all claims, disputes, or controversies of every kind and nature that may arise between Buyer and Seller shall be submitted to and resolved by binding arbitration, whether based in part or in whole on contract, tort, common law, statute, regulation or equity, including but not limited to any Claim related to: (1) the application for credit; (2) any negotiations or alleged promises, representations, undertakings or warranties; (3) the purchase or condition of the Vehicle or any products and services purchased in conjunction with the Vehicle, . . . ; (4) the Retail Installment Sales Contract (or other document providing for the financing of the purchase of the Vehicle), the Retail Purchase Agreement, and any related document, transaction, occurrence or relationship; . . . (6) any question as to whether a dispute may be arbitrated (including the interpretation and scope of this Agreement to Arbitrate), except that any dispute on the enforceability of the jury trial waiver or class action waiver shall be decided by a court of competent jurisdiction; (7) any alleged unfair, deceptive, or unconscionable acts or practices or alleged negligence, acts of fraud or misrepresentation . . . .

RPA ¶ 15. In addition, the second arbitration clause further provides, "[t]he Arbitrator shall not conduct any class-wide proceedings and will be restricted to resolving the individual disputes between the parties." *Id*.

The RISC does not reference the RPA or its arbitration clause(s). The RISC contains an integration clause as follows: "This contract contains the entire agreement between you and us relating to this contract." RISC at 1. The RISC does not include an arbitration clause.

When Lee Credit sold Mr. Migliaccio the vehicle, it assigned the RISC to Ally. Compl. ¶ 23. The assignment actually appears in the RISC itself, at the bottom of the first page. RISC at 1 ("Seller assigns its interest in this contract to Ally Bank . . . ."). The RPA references Lee Credit's "assigns" in the arbitration clause but makes no assignment: "This

4

Arbitration Agreement shall apply to any claims against . . . the assigns . . . of Seller . . . ." RPA at ¶ 15.

## PROCEDURAL HISTORY

Mr. Migliaccio sued Ally on July 25, 2024, in Maine state court. On August 28, 2024, Ally removed the case to federal court. ECF No. 1. Ally moved to compel arbitration and strike the class claims, or in the alternative to dismiss the Complaint. ECF No. 9. Once the motion was fully briefed, the Magistrate Judge recommended granting the motion to compel arbitration and strike the class claims. ECF No. 17. Because doing so would effectively resolve the matter in this Court, the Magistrate Judge did not address Ally's motion to dismiss.

The Magistrate Judge informed the parties that failure to timely object would waive their right to de novo review. ECF No. 17 at 8. Mr. Migliaccio moved for an extension of time to object, which the Court granted. ECF No. 19. The new deadline for objections was March 27, 2025. *See* ECF No. 19. On March 28, 2025, one day late, Mr. Migliaccio filed his objection. ECF No. 21. Ally pointed out the lateness in its response, ECF No. 22, at which point Mr. Migliaccio moved for an after-the-fact extension, citing an inadvertent calendaring error, ECF No. 23. Ally does not oppose the extension request, *see* ECF No. 25,[2] and the one-day mistake constitutes "excusable neglect," so I grant the motion. Fed. R. Civ. P. 6(b)(1)(B).

---

[2] Ally initially argued the Court should "ignore the untimely Objection." ECF No. 22 at 1 n.1. But that argument is inconsistent with Ally's later concession that it "does not oppose" Mr. Migliaccio's motion for an extension of time. ECF No. 25. Either way I would grant the motion based on excusable neglect. There is "no hint of bad faith" on Mr. Migliaccio's part and no evidence of prejudice to Ally. *See Perry v. Wolaver*, 506 F.3d 48, 56 n.10 (1st Cir. 2007). As the one-day delay is minimal, Ally later agreed to (or at least did not oppose) a continuance, and Ally suffered no prejudice from the one-day delay, the Court finds this to be excusable negligect and will accept and consider the Objection.

## DISCUSSION[3]

The Federal Arbitration Act ("FAA") provides that contractual arbitration agreements are, like any other contract, "valid, irrevocable, and enforceable," 9 U.S.C. § 2. The FAA reflects a federal policy "to make arbitration agreements as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (quotation modified).

When a party bound by an arbitration agreement nonetheless fails to arbitrate, the FAA "provides two parallel devices for enforcing [the] agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, 9 U.S.C. § 4." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). On a motion to compel arbitration—that is, seeking the affirmative order under § 4—the movant "bears the burden of demonstrating 'that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.'" *Air-Con*, 21 F.4th at 174 (quoting *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 474 (1st Cir. 2011)).

---

[3] Magistrate Judges can issue orders and recommended decisions. Orders resolve non-dispositive matters, and the District Court reviews them under a deferential, "clearly erroneous or . . . contrary to law" standard. Fed. R. Civ. P. 72(a). Recommended decisions resolve dispositive matters and, if a party objects, the District Court reviews the recommendation under a de novo standard. Fed. R. Civ. P. 72(b)(3).

Here, the Magistrate Judge issued a recommended decision, but I could construe his decision in part as an order because a motion to compel arbitration is non-dispositive. *Patton v. Johnson*, 915 F.3d 827, 833 (1st Cir. 2019). On the other hand, the motion to strike the class claims would be dispositive of those putative claims, so I must treat that aspect of the Magistrate Judge's decision as a recommended decision.

In any event, this is a distinction without a difference in this case: The motion to compel turns on questions of law, where the "contrary to law" and de novo standards effectively merge. *Id.*; *accord PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010) ("[F]or questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and review under Rule 72(b)'s de novo standard."). Accordingly, I review the Magistrate Judge's entire disposition under a de novo standard and refer to it, for simplicity, as the Recommended Decision.

Mr. Migliaccio does not meaningfully dispute that he and Lee Credit agreed to arbitrate their disputes. *See* ECF No. 15 at 8 ("Here, it seems likely that the Dealer and the Plaintiff formed an agreement to arbitrate under the RPA."). In other words, "a valid agreement to arbitrate exists." *Id.* However, Mr. Migliaccio objects to the Recommended Decision's conclusion that Ally "obtained the right to enforce" that valid arbitration agreement from Lee Credit when Lee Credit assigned the RISC to Ally.[4] *See* ECF No. 17.

## I.    Motion to Compel Arbitration

"[A]s a general principle, state law governs the inquiry as to whether a non-party to an arbitration agreement can assert the protection of the agreement." *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 12 (1st Cir. 2014). Maine law governs the RPA and RISC. *See* RPA at 3; RISC at 3. Mr. Migliaccio agrees that Lee Credit validly assigned the RISC to Ally. The only question is whether in doing so, Lee Credit also assigned the

---

[4] Ally argues that Mr. Migliaccio waived most of his substantive arguments on this point because he never raised them in front of the Magistrate Judge. *See* ECF No. 22 at 7 ("Plaintiff makes numerous new legal arguments in his objection . . . that he did not raise in his opposition to Ally's motion to compel arbitration . . . . [T]hese arguments have all been waived . . . ."). However, I am not convinced his arguments are so new. The thrust of his arguments now is consistent with the arguments he raised before the Magistrate Judge. *See Alston v. Town of Brookline*, 997 F.3d 23, 44 (1st Cir. 2021) ("The bottom line is that the defendants were clearly on notice of [the plaintiff's] argument . . . .").

For example, Ally claims Mr. Migliaccio has presented a new argument that to assign an arbitration agreement, there must be a "specific act manifesting intent to transfer." ECF No. 22 at 7. But Mr. Migliaccio argued before the Magistrate Judge that "there needs to be proof that the alleged assignor intended to transfer the right or rights being assigned," and then quoted a case stating that "there must be an act or manifestation by the assignor indicating the intent to transfer." ECF No. 15 at 8–9 (quoting *Sturtevant v. Town of Winthrop*, 732 A.2d 264, 267 (Me. 1999)). These arguments are indistinguishable.

A party pressing objections in front of the District Judge need not recycle a carbon copy of their earlier brief in front of the Magistrate Judge. "Rather, preservation of the issue depends on whether the issue itself was presented face up and squarely." *Alston*, 997 F.3d at 44 (preservation "does not depend on what authorities the arguing party cites"). That Mr. Migliaccio has rephrased, placed an old argument in a new light, or even taken a slightly new angle on a previously raised issue does not preclude my review.

right to enforce the RPA's arbitration agreement[5] as the RPA contains no specific assignment.

Contract interpretation is a question of law. *Alrig USA Acquisitions LLC v. MBD Realty LLC*, 2025 ME 11, ¶ 12, 331 A.3d 372. When interpreting any portion of a contract, the Court must consider the contract as a whole, reading "[a]ll parts and clauses . . . together [so] that it may be seen if and how one clause is explained, modified, limited or controlled by the others." *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989 (quoting *Peerless Ins. Co. v. Brennon*, 564 A.2d 383, 385 (Me. 1989)). "The interpretation of an unambiguous contract 'must be determined from the plain meaning of the language used and from the four corners of the instrument without resort to extrinsic evidence.'" *Id.* (quoting *Portland Valve, Inc. v. Rockwood Sys. Corp.*, 460 A.2d 1383, 1387 (Me. 1983)). "Ultimately, [the Court] seek[s] to give effect to the plain meaning of the words used in the contract and avoid rendering any part meaningless." *Dow v. Billing*, 2020 ME 10, ¶ 14, 224 A.3d 244.

"'[W]here several instruments are made part of one transaction, they will be read together and each will be construed with reference to the others, although the instruments do not in terms refer to each other.'" *DiPietro v. Boynton*, 628 A.2d 1019, 1022 (Me. 1993) (quoting *Business Credit Leasing, Inc. v. City of Biddeford*, 770 F.Supp. 35, 39 (D. Me. 1991)) (alteration in *DiPietro*). "'[W]hether the documents are . . . made part of the same

---

[5] The RPA's arbitration agreement is split into two separate clauses. One appears on the first page and states, "Purchaser(s) and Dealer ('Parties') agree, except as otherwise provided in this Agreement, to resolve by binding arbitration any Dispute between them. . . . BY SIGNING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ PARAGRAPH 15 ON THE REVERSE SIDE AND AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT TO ARBITRATE." RPA at 1. This clause references and incorporates the second and far more detailed clause on the following page at paragraph 15, which fleshes out the agreement to arbitrate. RPA at 2. I refer to these two clauses collectively as the RPA's arbitration agreement.

transaction and should be read together . . . "is governed by the intent of the parties manifested at the time of contracting and viewed in light of the surrounding circumstances."'" *DiPietro*, 628 A.2d at 1022 (quoting *Business Credit Leasing, Inc.*, 770 F.Supp. at 39)).

Migliaccio objects to the recommended decision because it cites to an opinion of the U.S. District Court for the Eastern District of Washington applying Washington law rather than Maine law. ECF No. 21 at 4. In that case, the court considered the RPA and the RISC together to conclude that the assignee of the RISC could enforce the arbitration agreement in the RPA against the buyer because the RPA and the RISC "together comprise[d] the singular agreement governing that transaction." *Loyola v. Am. Credit Acceptance LLC*, No. 2:19-cv-00002-SMJ, 2019 WL 1601362, at *7 (E.D. Wash. Apr. 15, 2019). While it is true that Washington law governing contract interpretation differs from Maine law because Washington courts consider the "entire context in which the contract was entered into," *id.* (citing *Berg v. Hudesman*, 115 Wash. 2d 657, 666, 801 P.2d 222, 228 (1990)), and Maine courts consider only the four corners of the document, *Am. Prot. Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989, Maine courts also consider multiple instruments together when they are part of the same transaction. *DiPietro*, 628 A.2d at 1022. The *Loyola* case cited by the Magistrate Judge involved contracts virtually identical to the ones at issue here, *compare Loyola*, 2019 WL 1601362, at *1–2, *with* RPA, *and* RISC, and Maine law, like the court in *Loyola*, follows a unitary transaction approach to multiple instruments, *DiPietro*, 628 A.2d at 1022. The Magistrate Judge did not err by looking to persuasive authority for application guidance when the result would be the same under controlling authority. In the same vein, the Magistrate Judge did not create a "special"

9

arbitration rule, *see* ECF No. 21 at 4, by applying the unitary transaction approach used by Maine courts.

Migliaccio further objects to the recommended decision because he argues the Magistrate Judge did not point "to any evidence of a manifestation of Lee's intent to assign the right to enforce the RPA to Ally." ECF No. 21 at 5. He also argues the Magistrate Judge erred in considering the RPA together with the RISC because the integration clause in the RISC should have excluded consideration of parole evidence. ECF No. 21 at 13.

In his recommended decision, the Magistrate Judge did identify language in the RPA that evinces Lee Credit's intent to assign the right to enforce the RPA to Ally and explained his reasoning:

> The arbitration agreement in the RPA states that the agreement applies to any claims against "the assigns" or "successors" of Lee. Notably, the arbitration agreement applies to Lee's assigns and is not limited to the assigns of the RPA. Furthermore, the agreement to arbitrate applies to all claims "related to ... (4) the Retail Installment Sales Contract (or other document providing for the financing of the purchase of the Vehicle)." Finally, as used in the RPA, "Agreement" means the RPA "together with any documents that are part of this transaction or incorporated into this Agreement by reference, whether such reference is made in this Agreement or the document itself."
>
> . . .
>
> Because the RPA includes the RISC (i.e., "agreement" is defined as the RPA "together with any documents that are part of this transaction"), and because the arbitration agreement applies to Lee's assigns and the RISC, through the assignment, Defendant obtained the right to enforce the arbitration agreement.

ECF No. 17 at 6–7.

The Magistrate Judge's reasoning depends on considering the contracts together, which is proper under Maine law. *See DiPietro*, 682 A.2d at 1022. It is true that in Maine,

the parole evidence rule "operates to exclude from judicial consideration extrinsic evidence offered to alter, augment, or contradict the unambiguous language of an integrated written agreement." *Handy Boat Serv., Inc. v. Pro. Servs., Inc.*, 1998 ME 134, ¶ 11, 711 A.2d 1306. However, under the unitary transaction approach, the contracts are read together, *see DiPietro*, 682 A.2d at 1022, and so the parole rule is inapposite. *See Montes v. Nat'l Buick GMC, Inc.*, 2024 UT 42, ¶ 34, 562 P.3d 688 ("Where multiple instruments are 'executed at the same time and are intertwined by the same subject matter,' the parol evidence rule 'does not prevent the court from considering both [or all] agreements together, "notwithstanding the presence of an integration clause.""" (quoting *Adams v. Parts Distr. Xpress, Inc.*, No. 2:20-cv-00697-JMG, 2021 WL 1088231, at *4 (E.D. Pa. Mar. 22, 2021))). Migliaccio has identified no controlling authority that states the presence of an integration clause defeats reading several instruments together when they are part of a unitary transaction. That there is a split of nonbinding authority on the matter, *compare Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 701 (4th Cir. 2012) (applying Maryland law to similar contracts to conclude RISC's integration clause did not prevent reading the contracts together as a single agreement), *with HHH Motors, LLP v. Holt*, 152 So.3d 745, 748 (Fla. Dist. Ct. App. 2014) (applying Florida law to similar contracts to conclude the merger clause of the RISC negated the arbitration clause of the RPA), does not render the Magistrate Judge's recommended decision contrary to law.

Migliaccio's final argument, that the FAA does not apply to this suit because the dispute arises from the RISC and not the RPA, *see* ECF No. 21 at 15–17, fails for the same

11

reasons. Where the RISC and RPA were part of the same transaction, they are considered together. *See DiPietro*, 682 A.2d at 1022.

## II.    Motion to Strike Class Claims

The Magistrate Judge also recommended striking the class claims because the RPA's arbitration clause contains a class-action waiver both in court and in arbitration. ECF No. 17 at 7–8. Class-action waivers are enforceable in the arbitration context. *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013). Upon de novo review, I find no error in the Magistrate Judge's recommendation to strike the class claims.

## CONCLUSION

For the foregoing reasons, the objection is OVERRULED and the Recommended Decision is AFFIRMED. I refer the parties to arbitration and stay the case while the parties arbitrate their dispute. Ally's Motion to Dismiss in the alternative is DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

Dated this 24th day of September, 2025.

/s/ Stacey D. Neumann
UNITED STATES DISTRICT JUDGE